# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES SPORTSMEN'S ALLIANCE FOUNDATION,<br><br>GEORGE GUTHRIE, and<br><br>FRIEDA KRPAN,<br><br>       Plaintiffs,<br><br>  v.<br><br>CENTERS FOR DISEASE CONTROL AND PREVENTION,<br><br>MANDY COHEN, Director of the Centers for Disease Control and Prevention,<br><br>DEPARTMENT OF HEALTH AND HUMAN SERVICES, and<br><br>XAVIER BECERRA, Secretary of the Department of Health and Human Services,<br><br>       Defendants. | Civil Action No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiffs, United States Sportsmen's Alliance Foundation, George Guthrie, and Frieda Krpan (collectively "Plaintiffs"), bring this action against Defendants, Centers for Disease Control and Prevention ("CDC"), Mandy Cohen, Director of the CDC, U.S. Department of Health and Human Services, and Xavier Becerra, Secretary of the Department Health and Human Services (collectively "Defendants"), and make the following allegations.

## INTRODUCTION

1. In recent years, Defendants have repeatedly exceeded their authority under the Public Health Service Act, 42 U.S.C. §§ 201–300, specifically Subchapter II, Part G, 42 U.S.C. §§ 264–

272.

2.      Multiple courts ruled that Defendants exceeded their authorities under the Public Health Service Act when they issued an order halting residential evictions nationwide during the COVID-19 Pandemic. *Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758 (2021); *Tiger Lily, LLC v. United States Dep't of Hous. & Urb. Dev.*, 5 F.4th 666 (6th Cir. 2021). Courts likewise found that the Public Health Service Act did not authorize Defendants to suspend the introduction of persons into the United States, *P.J.E.S. by & through Escobar Francisco v. Wolf*, 502 F. Supp. 3d 492 (D.D.C. 2020); restrict cruise ship travel, *State v. Becerra*, 544 F. Supp. 3d 1241 (M.D. Fla. 2021); or require masking while traveling, *Health Freedom Def. Fund, Inc. v. Biden*, 599 F. Supp. 3d 1144, 1164–65 (M.D. Fla. 2022), *vacated as moot sub nom. Health Freedom Def. Fund v. President of United States*, 71 F.4th 888 (11th Cir. 2023).

3.      Defendants have, once again, exceeded their authorities under the Public Health Service Act.

4.      On May 13, 2024, Defendants promulgated a Final Rule titled *Control of Communicable Diseases; Foreign Quarantine: Importation of Dogs and Cats*, 89 Fed. Reg. 41726 ("Dog Rule"). The Dog Rule took effect on August 1, 2024, and amends 42 C.F.R. § 71.51.

5.      The Dog Rule, *inter alia*, forbids any dog from entering the United States unless it is older than six (6) months and has an implanted microchip.

6.      These restrictions apply across the board to any dog crossing the border, including to dogs reentering the United States.

7.      The stated purpose of the Dog Rule is to prevent the introduction of the dog-maintained rabies virus variant, but the Rule applies to countries like Canada, which Defendants acknowledge is free of the rabies variant.

8.     Defendants do not have the authority to restrict dogs from entering the United States, especially without a finding that they are entering from a country where the rabies variant is present. And even if they did, the Dog Rule is arbitrary and capricious under the Administrative Procedure Act ("APA"). The Dog Rule also removed exemptions and was therefore promulgated without proper notice. And, finally, if the Dog Rule is authorized by the Public Health Service Act, then that Act violates the nondelegation doctrine.

9.     Plaintiffs ask the Court to find the Dog Rule unlawful, set it aside, and award Plaintiffs preliminary and permanent injunctive relief.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (United States as defendant), and 5 U.S.C. § 702 (review of agency action under the APA).

11.     This Court has the authority to grant declaratory relief, to grant injunctive relief, and to vacate and set aside the Dog Rule under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and the APA, 5 U.S.C. §§ 702, 703, 706. This Court also has authority to grant preliminary injunctive relief under Fed. R. Civ. P. 65.

12.     Venue properly lies in this Court under 28 U.S.C. § 1391(e)(1). This action is brought against a federal agency and officers of the United States in their official capacity, a substantial part of the events giving rise to Plaintiffs' claims occurred in this District. Plaintiff Guthrie resides in this district, and Plaintiff United States Sportsmen's Alliance Foundation has members who reside in this District.

## PARTIES

13.     Plaintiff Sportsmen's Alliance Foundation is an Ohio-based non-profit organization under Section 501(c)(3) of the Internal Revenue Code. It is dedicated to promoting and educating the public about our hunting, fishing, and trapping heritage, and science-based wildlife management.

Sportsmen's Alliance Foundation achieves its mission through public education and issue research conducted both on its own and through partnerships with local sportsmen and conservation organizations. It also engages in litigation when necessary to protect the beneficial pursuits of hunting, trapping, fishing, and scientific wildlife management practices.

14.    Sportsmen's Alliance Foundation has organizational members, including its parallel entity, the U.S. Sportsmen's Alliance, a Section 501(c)(4) non-profit whose membership consists of individuals across the country, including individuals who reside throughout Michigan that are affected by the Dog Rule.

15.    Dogs are part and parcel of our hunting heritage. The U.S. Fish and Wildlife Service manual recognizes that using "properly trained dogs is an important part of the American hunting tradition," and "encourage[s] the use of properly trained hunting dogs for the hunting of waterfowl, upland game birds, and other species."[1] Sportsmen's Alliance Foundation has sued the federal government in the past when it promulgated illegal restrictions on hunting with dogs under the APA. *See*, *e.g.*, *Sportsmen's Alliance Foundation v. U.S. Fish and Wildlife Service*, No. 2:22-cv-00175-cr (D. Vt.).

16.    Sportsmen's Alliance Foundation has organizational members who are harmed by the Dog Rule and brings this suit on behalf of those members.

17.    Plaintiff George Guthrie lives in Barry County, Michigan. He is the president of the Wolverine State Coon Hunters Club, which is in Calhoun County, Michigan. Plaintiff Guthrie organizes dog trials in the State of Michigan, including in Calhoun County. Individuals from Canada cross the border with their dogs to participate in his trials. Those individuals will no longer be able to bring their dogs to his trials unless their dogs are microchipped and above six (6) months old.

---

[1]Available at https://www.fws.gov/policy-library/605fw2 (last visited July 25, 2024).

18.     Plaintiff Frieda Krpan is a Canadian citizen and resident of Manitoba, Canada. She and her husband are premier beagle breeders and are the owners of Branko's Beagles. Beagles are excellent rabbit-hunting dogs. She has produced many champion beagles, and she has sold her beagles to buyers in every state except Hawaii, which does not have a native rabbit population. Plaintiff Krpan is harmed by the Dog Rule because she can no longer sell dogs into the United States until they are above six (6) months of age and microchipped.

19.     Defendant CDC is an agency of the United States Government located within the Department of Health and Human Services. The CDC is vested with regulatory authority to implement the Public Health Service Act.[2]

20.     Defendant Mandy Cohen is the Director of the CDC. Director Cohen is sued in her official capacity.

21.     Defendant U.S. Department of Health and Human Services is an agency of the United States Government.

22.     Defendant Xavier Becerra is the Secretary of the Department of Health and Human Services. Secretary Becerra is sued in his official capacity.

## LEGAL FRAMEWORK

### I.     *The Animal Welfare Act.*

23.     The Animal Welfare Act, as amended, is a comprehensive regulatory framework that governs many things, including the importation of live dogs. 7 U.S.C. §§ 2148, 2131.

24.     The Animal Welfare Act forbids importing dogs "into the United States *for purposes of resale* unless … the dog" is healthy, vaccinated, and over six months old. 7 U.S.C. § 2148(b)(1)

---

[2] The Act originally vested this authority in the Surgeon General, but it has since been transferred to the Department of Health and Human Services and to the CDC. 20 U.S.C. § 3508; 31 Fed. Reg. 8855 (June 25, 1966); *P.J.E.S.*, 502 F. Supp. 3d at 503.

(emphasis added); *see also id.* § 2148(a) (defining importer and resale).

25.     The Department of Agriculture and the Animal and Plant Health Inspection Service recognize that, by restricting the importation of live dogs for resale only, Congress did not intend to restrict "dogs imported by a person who will use the dog as a personal pet, for sport, for shows or competitions, or for breeding or semen collection." 79 Fed. Reg. 48653, 48654 (Aug. 18, 2014).

### II.     *The Public Health Service Act of 1944.*

26.     Subchapter II, part G of the Public Health Service Act of 1944 governs quarantines and inspections. 42 U.S.C. §§ 264–272.

27.     Section 361 of the Act, 42 U.S.C. § 264(a), provides:

The Surgeon General, with the approval of the Secretary, is authorized to make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession. For purposes of carrying out and enforcing such regulations, the Surgeon General may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary.

28.     The CDC's authority is limited to actions that are similar in nature to the actions that are expressly listed in the second sentence of § 264(a).

29.     Section 362 of the Act, 42 U.S.C. § 265, provides:

Whenever the Surgeon General determines that by reason of the existence of any communicable disease in a foreign country there is serious danger of the introduction of such disease into the United States, and that this danger is so increased by the introduction of persons or property from such country that a suspension of the right to introduce such persons and property is required in the interest of the public health, the Surgeon General, in accordance with regulations approved by the President, shall have the power to prohibit, in whole or in part, the introduction of persons and property from such countries or places as he shall designate in order to avert such danger, and for such period of time as he may deem necessary for such purpose.

30.     To regulate imports under § 265, the CDC must, *inter alia*, make a predicate finding that

a communicable disease is present in the country of origin, that there is a danger that the communicable disease can enter the United States from that country, and imports from that country will increase the risk that the disease will be introduced into the United States. 42 C.F.R. § 71.63(a).

31.     Section 365 of the Act, 42 U.S.C. § 268, declares that designated consulars and medical officers of the United States shall make reports to the CDC regarding health conditions in the location where they are stationed. It also declares that customs officers and Coast Guard officers shall "aid in the enforcement of quarantine rules and regulations."

32.     Section 367 of the Act, 42 U.S.C. § 270, authorizes the CDC to issue quarantine regulations for civil air navigation and civil aircraft.

33.     Section 368 of the Act, 42 U.S.C. § 271, provides for penalties for violating quarantine laws codified at 42 U.S.C. §§ 264–267, 269.

34.     The CDC used to have a policy of "seek[ing] to use the least restrictive means necessary to prevent the spread of communicable disease" when promulgating regulations under Sections 264 and 265. *See*, *e.g.*, *Control of Communicable Diseases* 82 Fed. Reg. 6890, 6890, 6892, 6912 (Jan. 19, 2017) ("HHS/CDC agrees and clarifies that in all situations involving quarantine, isolation, or other public health measures, it seeks to use the least restrictive means necessary to prevent spread of disease.").

### III.    The APA.

35.     Under the APA, courts must "hold unlawful and set aside agency action[s]" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law"; "contrary to constitutional right, power, privilege, or immunity"; "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right"; or "without observance of procedure required by

law." 5 U.S.C. § 706(2)(A)–(D).

## FACTUAL BACKGROUND

### RABIES

36.   The rabies virus has adapted to its reservoir hosts. Accordingly, "distinct rabies virus variants are maintained within specific animal reservoir species (eg, the virus variant associated with rabies maintained by dog-to-dog transmission is termed the canine rabies virus variant)." *Merck Veterinary Manual*, Rabies in Animals ("Merck Manual").[3]

37.   When the CDC issued its Temporary Suspension of Dogs Entering the United States from High-Risk Rabies Countries, it used the term "canine rabies virus variant." 86 Fed. Reg. 32041 (June 16, 2021). In later notifications, however, the CDC replaced canine rabies virus variant with dog-maintained rabies virus variant. 89 Fed. Reg. 41726 (May 13, 2024).

38.   "The canine rabies virus variant exists in Africa, Asia, the Middle East, and parts of Central and South America and the Caribbean." Merck Manual.

39.   "Generally, each rabies virus variant is responsible for virus transmission between members of a major reservoir species in the geographic area in which it is enzootic. However, cross-species transmission of rabies virus variants does occur." Merck Manual.

40.   ***"Transmission of rabies virus almost always occurs via introduction of virus-laden saliva into tissues, usually by the bite of a rabid animal."*** Merck Manual. (emphasis in original).

41.   The United States has been free of canine rabies since 2007. 89 Fed. Reg. at 41726.

42.   Other countries eradicated the virus much sooner. Prior to two infected dogs entering Canada from Iran in 2022, Canada had been rabies-free "since the 1960s." 88 Fed. Reg. 43978,

---

[3] Available at https://www.merckvetmanual.com/nervous-system/rabies/rabies-in-animals (last visited August 5, 2024).

44006 (July 10, 2023). Both of those dogs were euthanized.[4] "The UK has been rabies-free since the beginning of the 20th century."[5]

43.    The CDC reports that there are fewer than ten reported rabies deaths in the United States per year. Seven in ten rabies deaths in the United States are attributable to bats, another two in ten are attributable to other wildlife. And the final one in ten is attributable to individuals who acquired rabies abroad.[6]

PRIOR REGULATIONS AND ACTIONS

44.    Federal regulations first regulated dog importations in 1956. 21 Fed. Reg. 9789, 9789 (Dec. 12, 1956). With exceptions for dogs arriving from certain countries, those regulations primarily required the owner to submit a sworn statement attesting to the dog's health or to submit the dog for inspection.

45.    Those regulations were updated and recodified at 42 C.F.R. § 71.51 in 1985. *See* 50 Fed. Reg. 1516, 1522–1523 (Jan. 11, 1985).

46.    The 1985 regulations required that all dogs entering the country be inspected, and only dogs showing "no signs of communicable disease[s]" would be admitted. 42 C.F.R. § 71.51(b)(1) (1985). Dogs that did not appear healthy could be quarantined and inspected by a veterinarian. 42 C.F.R. § 71.51(b)(2) (1985). The regulations also required a rabies vaccination certificate unless the owner demonstrated that (i) a dog under six months old had only been in a rabies-free country, (ii) a dog over six months old had only been in rabies-free countries for the last six months, or (iii)

---

[4] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC10273786/; https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9902034/ (both last visited on August 5, 2024).

[5] https://www.gov.uk/government/news/public-health-england-warns-travellers-of-rabies-risk (last visited August 5, 2024).

[6] https://www.cdc.gov/rabies/about/index.html (last visited August 5, 2024).

the dog was being taken to a research facility and a vaccine would interfere with the research. 42 C.F.R. § 71.51(c)(1) (1985); *see also* 42 C.F.R. § 71.51(a) (valid rabies vaccination certificates were only issued for dogs over three months old). Dogs could also be admitted to the country regardless of the vaccination certification requirement in subsection (c)(1) if they were quarantined in accordance with subsection (c)(2). 42 C.F.R. § 71.51(c)(2) (1985). And subsection (e) authorized the CDC to impose additional restrictions or to exclude dogs coming from areas that have high rates of rabies. 42 C.F.R. § 71.51(e) (1985).

47.    In 2019, the CDC published *Guidance Regarding Agency Interpretation of "Rabies-Free" as It Relates to the Importation of Dogs Into the Untied States*. 84 Fed. Reg. 724 (January 31, 2019). Prior to that guidance, the CDC did not distinguish between the canine rabies virus variant and other rabies variants. *Id*. at 725. That policy clarified that, for purposes of 42 C.F.R. § 71.51(c)(1) (1985), a rabies-free country was one in which there was a low risk of importing the canine rabies virus variant, i.e., a canine rabies virus variant free or low-risk country as opposed to a high-risk country. *Id*. Dogs entering the United States from a canine rabies virus variant free or low-risk country did not need a valid rabies vaccination certificate. *Id*.

48.    Under that guidance,

- CRVV-free means that CDC has assessed the country as not having CRVV present, based on internationally accepted standards.

- Low-risk means the country is at low risk for CRVV transmission based on the following considerations: The virus is limited to a localized area, surveillance and dog vaccination programs are adequate, and the virus is in a controlled status with the country heading toward eventual CRVV-free status.

- High-risk means the country is at high risk for CRVV transmission as demonstrated by the presence and geographic distribution of the virus and by low quality of or low confidence in the country's surveillance systems and its dog vaccination programs.

*Id*.

49.    In 2021, the CDC suspended the importation of dogs from high-risk countries. *Temporary Suspension of Dogs Entering the United States From High-Risk Rabies Countries*. 86 Fed. Reg. 32041 (June 16, 2021). The primary justification for the suspension was that the CDC needed to focus resources elsewhere during the COVID-19 pandemic. *Id*. In doing so, the CDC relied on 42 C.F.R. § 71.51(e) (1985) and 42 C.F.R. § 71.63. 86 Fed. Reg. at 32041–32042. The CDC also made the findings required under 42 U.S.C. § 265 and 42 C.F.R. § 71.63. 86 Fed. Reg. at 32049. That temporary suspension was to last for a maximum of one year after publication in the Federal Register. *Id*.

50.    That temporary suspension was extended on June 1, 2022, and January 27, 2023. *See* 88 Fed. Reg. 43570, 43572 (July 10, 2023). And on July 10, 2023, the suspension was once again extended "through July 31, 2024." *Id*. The CDC again made the findings required under 42 U.S.C. § 265 and 42 C.F.R. § 71.63. *Id*. at 43580.

### THE PROPOSED RULE

51.    The CDC simultaneously published a Proposed Rule with the July 10, 2023 extension. *Control of Communicable Diseases; Foreign Quarantine: Importation of Dogs and Cats*, 88 Fed. Reg. 43978 (July 10, 2023). The Proposed Rule contained comprehensive proposed amendments to 42 CFR § 71.51. *Id.* at 44020–44029.

52.    In the preamble to the Proposed Rule, "CDC notes that both Canada and Mexico are currently DMRVV-free countries, and a limited exception to accommodate personal pet owners who travel by land between the U.S. and Canada or Mexico is unlikely to threaten the public's health." *Id*. at 43980.

53.    The Proposed Rule required that all dogs entering the country be above six months old. This was to address concerns over rabies vaccination, regardless of whether the dog was coming

from a high-risk, low-risk, or rabies-free country. *Id*. The Proposed Rule explained that "[d]ogs cannot be vaccinated effectively against rabies before 12 weeks of age and are not considered fully vaccinated until 28 days after vaccination. Establishing a six-month minimum age requirement for the import of dogs aligns with current USDA requirements for commercial dog imports under the Animal Welfare Act and will better protect the public's health from rabies." *Id*. (footnotes omitted); *see also id*. at 43993 (Six months aligns with requirements for importing dogs for commercial resale under the Animal Welfare Act.).

54.    At the time the Proposed Rule was issued, CDC only required dogs to be four months old if they were coming from high-risk countries. *Id*. at 43993. That is the age at which a dog can be considered fully vaccinated for rabies. *Id*. But veterinarians cannot accurately age a dog at four months, whereas they can accurately age a dog at six months by checking for "adult incisors and canine teeth." *Id*.

55.    The Proposed Rule, however, called for an exception allowing individuals to bring "three personal pet dogs under six months of age in a calendar year if arriving via a U.S. land port from Canada or Mexico if the dog has not been in a DMRVV high-risk country in the previous six months." *Id*.; *see also id*. at 44022 (Subsection (f)).

56.    The Proposed Rule also introduced a microchip requirement for all dogs entering the country, which was not previously required. *Id*. at 43979, 43993, 44022. The microchip must be implanted under the dog's skin and be Individual Standards Organization (ISO) compliant. *Id*. at 43993. Requiring the microchip "would help ensure that veterinary paperwork and animal identification can be verified." *Id*. The CDC further explained that it would "bring the United States into international alignment with the World Organisation[7] for Animal Health (WOAH) standards that

---

[7] The WOAH spells Organisation with an s.

all dogs have permanent identification or marking for international movement." *Id*.

57.    And the Proposed Rule introduced requirements for proving that a dog had only been in a low-risk or rabies-free country. *Id*. at 43996; 44026. This would be done through veterinary records "confirming that the dog is at least six months of age, is microchipped, and has been only in a DMRVV low-risk or DMRVV-free country for the six months prior to importation into the United States." *Id*. at 43996.

**THE FINAL RULE**

58.    The Dog Rule was finalized on May 13, 2024, and took effect on August 1, 2024. 89 Fed. Reg. 41726.

59.    "The final rule requires for all dog imports: a microchip, six-month minimum age requirement for admission, and importer submission of a CDC import form (*CDC Dog Import Form*)." *Id*. at 41727.

60.    The microchip requirement is now codified at 42 C.F.R. §§ 71.51(g), (v)(xiv) (2024). The age requirement is now codified at 42 C.F.R. §§ 71.51(f), (v)(xiii) (2024). The import form requirement is now codified at 42 C.F.R. §§ 71.51(h), (v)(ii) (2024).

61.    The Final Rule, however, removed the exemption allowing three personal pets to be introduced from Canada and Mexico. 89 Fed. Reg. at 41739.

62.    The Final Rule codifies the 2019 guidance's distinctions between rabies-free, low-risk, and high-risk countries based on the canine rabies virus variant and is not concerned with other rabies variants. *Id*. at 41838; 42 C.F.R. §71.51(a) (2024). The Final Rule further declares that "CDC … has confidence in" rabies-free and low-risk countries that follow the WOAH's rabies validation process. 89 Fed. Reg. at 41739.

63.    Regarding the microchip requirement, the Final Rule reaffirms that all dogs, "including dogs returning to the United States after traveling abroad, be microchipped with an Individual

13

Standards Organization (ISO)-compatible microchip prior to travel to the United States." *Id*. at 41727. "The microchip information must be included on importation documents to help ensure that dogs presented for admission are the same dogs as those listed on the rabies vaccination records or other documents." *Id*.

64.    The Final Rule now requires that the "microchip must have been implanted on or before the date the most recent rabies vaccine was administered." *Id*. at 41740; *see also* 42 C.F.R. §71.51(g)(2) (2024). This change was implemented "to ensure that the dog receiving the rabies vaccine is properly identified by the microchip." *Id*; *see also id.* at 41748 (Table 1 Justification), 41767.

65.    The Final Rule reaffirms that the six-month age requirement was implemented to make sure that the dog had received its rabies vaccination and "aligns with current USDA requirements for commercial dog imports under the Animal Welfare Act." *Id* at 41727; *see also id*. at 41747 (Table 1 Justification), 41766.

66.    The Final Rule justifies the age requirement as to low-risk and rabies-free countries on the grounds that people may attempt to import dogs from high-risk countries through low-risk or rabies-free countries. *Id*. at 41765.

67.    Under the Final Rule "[t]here are no vaccination requirements" for dogs entering "from [a] DMRVV-Free or DMRVV Low-Risk Country." *Id* at 41731 (Table E1). The Final Rule notes that "CDC has not observed any DMRVV infections . . . among dogs imported from DMRVV-free or low-risk countries." *Id.* at 41753.

68.    The Final Rule also requires that individuals submit a CDC Dog Import Form and show the receipt prior to entering the country. 42 C.F.R. §71.51(h) (2024). But "the CDC Dog Import Form does not require review by CDC staff prior to the issuance of the auto-generated receipt." 89

Fed. Reg. 41769.

69.    Submitting that form and showing proof of the receipt are all that is required to bring a dog into the United States from a low-risk or rabies-free country.[8] The Form does not ask for the dog's microchip number or any rabies-vaccination information, if the dog is coming from a rabies-free or low-risk country.[9] The form's instructions state that writing the dog's name is required, but giving its age, sex, breed, and color are optional.[10]

70.    The CDC's website clarifies that the only requirements for a dog entering the country from a rabies-free or low-risk country are (1) the import form receipt, (2) the dog "must appear healthy upon arrival," (3) the dog "must be at least 6 months old" upon entry or return, and (4) the dog must have a detectable microchip.[11]

71.    The Final Rule purports to deviate from the practice of using the least restrictive means because the people do not have a right to import. 89 Fed. Reg. at 41738.

### PLAINTIFFS' IRREPARABLE INJURIES

72.    Plaintiffs and their members will suffer irreparable harm unless preliminary and permanent injunctive relief is granted. Monetary damages are not available to them under the APA. 5 U.S.C. § 702.

73.    Plaintiffs and their members have concrete plans to travel between the United States and Canada and/or to sell puppies under six months into the United States in the coming months. They

---

[8]    https://www.cdc.gov/importation/dogs/rabies-free-low-risk-countries.html (last visited on August 5, 2024).

[9]    The form is available at https://cdc-786687.workflowcloud.com/forms/090dc543-7b2f-4538-b2c7-2919d12ecc73 (last visited on August 5, 2024).

[10]    The instructions are available at https://www.cdc.gov/importation/dogs/dog-import-form-instructions.html#cdc_generic_section_2-dogs-coming-from-dog-rabies-free-or-low-risk-countries (last visited on August 5, 2024).

[11]    *See* note 8 supra.

must either refrain from traveling with their dogs or microchip their dogs. And the puppies cannot be sold into or otherwise enter the United States.

74.    Plaintiffs and their members will also suffer a loss of goodwill because their unique dogs cannot be sold into the United States until they have reached six months of age, which is too late to begin training and proper socialization or will require more time and efforts to fully train and socialize the dogs. Individuals from Canada cannot participate in events that Plaintiffs hold in the United States unless their dogs are over six months old and microchipped.

**FIRST CLAIM FOR RELIEF**
**Violation of the APA**
**Agency Action not in accordance with the law and in excess of statutory authority**

75.    Plaintiffs reallege and incorporate by reference all allegations in the proceeding paragraphs of this Complaint.

76.    Under the APA, courts must "hold unlawful and set aside agency action[s]" that are "not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C).

77.    The Dog Rule purports to derive its statutory authority primarily from 42 U.S.C. § 264(a), and lists 42 U.S.C. §§ 265, 268, 270, 271 as secondary sources of authority. 89 Fed. Reg. 41737.

78.    CDC continues to interpret § 264(a) to grant it broad authority—divorced from the limitations found in § 264(a) itself, elsewhere in the Public Health Service Act, and other comprehensive statutes, including the Animal Welfare Act. It does so despite several courts rejecting its interpretation over the last four years. *Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758 (2021); *Tiger Lily, LLC v. United States Dep't of Hous. & Urb. Dev.*, 5 F.4th 666 (6th Cir. 2021).

79.    In issuing the Dog Rule, CDC also exceeded its authority under 42 U.S.C. § 265. Section 265 requires the CDC to make certain predicate findings before it can restrict importations, includ-

16

ing a finding that the communicable disease is present in the country of origin, that there is a danger that the communicable disease can enter the United States from that country, and imports from that country will increase the risk that the disease will be introduced into the United States. *See also* 42 C.F.R. § 71.63(a). The CDC did not make country-specific findings prior to issuing the Dog Rule. To the contrary, the CDC found that many countries, including Canada, are rabies-free and nevertheless restricted importations.

80.   Sections 268, 270, and 271 do not remotely authorize the restrictions in the Dog Rule.

81.   This Court should hold unlawful and set aside the Dog Rule because the Dog Rule is not in accordance with the law, and CDC acted in excess of its statutory authority. 5 U.S.C. § 706(2)(A), (C).

## SECOND CLAIM FOR RELIEF
### Violation of the APA
### Arbitrary and Capricious Agency Action

82.   Plaintiffs reallege and incorporate by reference all allegations in the proceeding paragraphs of this Complaint.

83.   Under the APA, courts must "hold unlawful and set aside agency action[s]" that are "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A).

84.   An Agency Action is "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

85.   The CDC considered factors that Congress did not intend for it to rely on, primarily the Animal Welfare Act's restrictions on importing dogs under six months of age for resale.

86.     The CDC's explanation for the Dog Rule also runs counter to the evidence before it. The United States has been free of the rabies variant since 2007, and the CDC has not observed any dogs with rabies in rabies-free or low-risk countries. The Dog Rule, as it relates to rabies-free countries, therefore, is not "necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States." 42 U.S.C. §264(a).

87.     The age and microchip requirements are arbitrary and capricious because the rationale for them is to ensure that the dogs are vaccinated for rabies—but there is no rabies-vaccination requirement for dogs coming from rabies-free countries. The CDC is not even checking the age or microchip status of dogs entering from rabies-free countries. These requirements, therefore, are not "necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States." 42 U.S.C. §264(a). The requirements also cannot be used to detect fraud when the CDC is not checking for them.

88.     The CDC also failed to consider an important aspect of the problem. It claims to have high confidence in other rabies-free countries that follow WOAH guidelines. This would include Canada, which has been rabies-free since the 1960s. Canada euthanized the only dogs that were found to have rabies (imported from Iran) in the country since the 1960s. CDC, however, did not consider these corrective measures.

89.     CDC did not explain departure from past practices, either. *F.C.C. v. Fox Television Stations, Inc.,* 556 U.S. 502, 515-16 (2009). CDC used to make the required predicate findings under 42 U.S.C. § 265 when restricting dog imports from certain countries. It did not make those findings when promulgating the Dog Rule or display any awareness that it was deviating from its past practices.

90.     CDC's explanation for its departure from the least-restrictive means process is also arbi-

trary and capricious because citizens have a right to travel and reenter the country. *Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 61 (2001); *Kent v. Dulles,* 357 U.S. 116, 126 (1958).

91.    This Court should hold unlawful and set aside the Dog Rule because the Dog Rule is arbitrary and capricious, and CDC abused its discretion in promulgating it. 5 U.S.C. § 706(2)(A).

### THIRD CLAIM FOR RELIEF
**Violation of the APA**
**Insufficient Notice**

92.    Plaintiffs reallege and incorporate by reference all allegations in the proceeding paragraphs of this Complaint.

93.    Under the APA, courts must "hold unlawful and set aside agency action[s]" that are "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

94.    The APA requires that Agencies publish a notice of the proposed rule in the Federal Register and give interested persons the opportunity to comment on the proposed rule. 5 U.S.C. §§ 553(b)–(c). For the notice to be sufficient, "the affected party 'should have anticipated' the agency's final course in light of the initial notice." *Covad Commc'ns Co. v. FCC*, 450 F.3d 528, 548 (D.C. Cir. 2006).

95.    The Proposed Rule contained an exception that would allow individuals to bring three personal pets into the United States from Canada and Mexico in a calendar year. That exception was removed from the Final Rule.

96.    This Court should hold unlawful and set aside the Dog Rule because it was promulgated without observing procedures that are required by law. 5 U.S.C. § 706(2)(D).

### FOURTH CLAIM FOR RELIEF
**Violation of U.S. Const. Art. I § 1**
**Unconstitutional Exercise of Legislative Power**

97.    Plaintiffs reallege and incorporate by reference all allegations in the proceeding para-

graphs of this Complaint.

98.   Article I, § 1 of the U.S. Constitution states, "[a]ll legislative powers herein granted shall be vested in a Congress of the United States." Under Article I, § 1, only Congress may engage in lawmaking. The nondelegation doctrine forbids Congress from transferring its legislative power to the Executive Branch. Congress must also supply the Executive Branch with an intelligible principle to guide enforcement decisions. *Gundy v. United States*, 588 U.S. 128, 135 (2019).

99.   To the extent the Dog Rule is authorized by the Public Health Service Act, it violates Article I's Vesting Clause and the Separation of Powers because there are no intelligible principles guiding CDC.

100.  This Court should declare that 42 U.S.C. § 264(a) is unconstitutional because it violates Article I and the nondelegation doctrine.

## PRAYER FOR RELIEF

Plaintiffs respectfully request this Court to:

A.  Issue a declaration, order, and judgment holding unlawful, enjoining, and setting aside the Dog Rule;

B.  Issue preliminary and permanent injunctive relief enjoining Defendants from enforcing the Dog Rule;

C.  Issue a declaration, order, and judgment holding that the Public Health Service Act is unconstitutional;

D.  Award Plaintiffs their costs of litigation, including reasonable attorney's fees, in accordance with the Equal Access to Justice Act, 28 U.S.C. § 2412, or other applicable law; and

E.  Grant such further and additional relief as this Court deems just and proper.

August 7, 2024                          Respectfully submitted.


                                        /s/ *Michael T. Jean*
                                        Michael T. Jean (MI Bar No. P76010)
                                        Sportsmen's Alliance Foundation
                                        801 Kingsmill Parkway
                                        Columbus, OH 43229
                                        (248) 508-9765
                                        MJean@sportsmensalliance.org

                                        *Counsel for Plaintiff Sportsmen's*
                                        *Alliance Foundation*



August 7, 2024                          Respectfully submitted.


                                        /s/ *Daniel R. Olson*
                                        Daniel R. Olson (MI Bar No. P64603)
                                        Gielow Groom Terpstra & McEvoy, PLC
                                        281 Seminole Road
                                        Norton Shores, MI 49444
                                        (231) 291-0111
                                        daniel@ggtmlaw.com

                                        *Counsel for Plaintiffs*