UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES SPORTSMEN'S
ALLIANCE FOUNDATION, et al.,

    Plaintiffs,                                      Hon. Paul L. Maloney

v.                                                    Case No. 1:24-cv-818

CENTERS FOR DISEASE CONTROL, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

Plaintiffs United States Sportsmen's Alliance Foundation (USSAF), George Guthrie, and Frieda Krpan commenced this action pursuant to the Administrative Procedures Act, 5 U.S.C. §§ 701 *et seq.*, and the Court's federal question jurisdiction under 28 U.S.C. § 1331 against the Centers for Disease Control and Prevention (CDC), CDC Director Mandy Cohen, the Department of Health and Human Services (HHS), and Secretary of HHS Xavier Becerra, challenging the CDC's final rule containing updates to the so-called Dog Rule aimed at detection of the dog-maintained rabies virus variant (DMRVV). *See* 89 Fed. Reg. 41726 (May 13, 2024).

Presently before me pursuant to 28 U.S.C. § 636(b)(1)(B) is Plaintiff's Opposed Motion for Preliminary Injunction. (ECF No. 8.) I heard oral argument on December 19, 2024, and the matter is now ready for decision. For the following reasons, I recommend that the Court **DENY** the motion.

## I. Background

### A. DMRVV and the Dog Rule

Rabies is a zoonotic, viral disease that affects the central nervous system. It is found in both domesticated and wild animals. The disease is preventable through vaccines. Dog-transmitted rabies, or DMRVV, resulting from bites and scratches is responsible for 99 percent of human rabies cases.[1] Although the United States eliminated DMRVV in 2007 (ECF 10-1 at PageID.161), the disease persists in over 150 countries and territories around the world.[2] Rabies is nearly 100 percent fatal in both humans and animals after clinical signs appear. (*Id.*) However, rabies deaths are preventable if the individual receives prompt post-exposure prophylaxis (PEP), a painful and costly treatment administered through a series of injections. (*Id.* at PageID.164.)

Federal quarantine regulations have controlled the entry of dogs into the United States since 1956 (Dog Rule). *See* 21 Fed. Reg. 9879 (Dec. 12, 1956). The 1956 regulation was updated in 1985. *See* 42 C.F.R. § 71.51 (1985). Under that version, any dog arriving for admission into the U.S. for non-research purposes was required to prove vaccination by presenting a "valid rabies vaccination certificate" unless: (1) the dog was less than six months of age and had only been in rabies-free countries; or (2) the dog was six months of age or older and had only been in rabies-free countries for the six-month period before arrival. 42 C.F.R. § 71.51(c). A valid rabies vaccination certificate required that the dog be at least four months of age; the dog must have been at least three months old at the time of vaccination and waited at least 30 days after vaccination before entry. *Id.* § 71.51(a).

---

[1] *See* https://www.who.int/news-room/fact-sheets/detail/rabies#:~:text=Rabies%20is%20a%20vaccine%2Dpreventable,%2C%20cats%2C%20livestock%20and%20wildlife (last visited Dec. 12, 2024).

[2] *Id.*

2

### B. The CDC's 2024 Changes to the Dog Rule

In 2020, to combat the COVID-19 pandemic, the CDC launched an agency-wide response to the pandemic. 86 Fed. Reg. 3204, 32043 (June 16, 2021). During this time, the CDC documented a sizable increase in the number of dogs arriving from high-risk countries with fraudulent rabies vaccine documents. *Id.* The increase in the number of inadequately vaccinated dogs that importers were attempting to import into the U.S. created a public health risk of reintroducing DMRVV, while public health management of the problem was insufficient due to the ongoing COVID-19 response. *Id.* Because preventing the entry of dogs infected with rabies and possible reintroduction of the disease into the U.S. is a public health priority, in 2021 the CDC announced a temporary suspension on the importation of dogs from high-risk rabies countries. *Id.* at 32041. By this time, there had been four incidents of rabid dog importations into the U.S. involving falsified documents since 2015. (ECF No. 10 at PageID.163.) These dogs were imported as parts of groups of dogs by animal rescue organizations for pet adoption purposes. In all cases, multiple individuals were required to undergo PEP, and the other dogs in the groups had to be quarantined for multiple-month periods. The dogs involved in one incident were originally from Egypt (a high-risk country) but were diverted through Canada (a rabies-free country) for admission into the U.S. (*Id.* at PageID.164–66.)

In connection with, or in addition to, the temporary suspension, the CDC began the process of updating its regulations to account for developments in recent years affecting dog imports, primarily fraudulent vaccine documentation. (*Id.* at PageID.166.) The CDC issued its Notice of Proposed Rulemaking on July 10, 2023. 88 Fed. Reg. 43978. On May 13, 2024, the CDC issued a final rule, which became effective on August 1, 2024. 89 Fed. Reg. 41726. The final rule contains three main updates to the Dog Rule. That is, all dogs entering the U.S. must : (1) be microchipped;

3

(2) be at least six months old; and (3) have a CDC Dog Import form. *Id.* at 41726; *see also* 42 C.F.R. § 71.51.

The CDC settled on the six-month age requirement for at least three reasons. First, the Dog Rule requires that all dogs, including those from rabies-free and low-risk countries, be inspected for signs of communicable disease. 42 C.F.R. § 71.51(i). The inspections are often completed by U.S. Customs and Border Protection (CBP) agents when the dogs arrive from abroad. (ECF No. 10-1 at PageID.172.) CBP agents alert the CDC when an inspection reveals suspicious circumstances warranting an inspection by a CDC veterinarian. (*Id.* at PageID.172.) The CDC conducted an average of 38 such investigations per year of sick or dead dogs from 2019–2023. (*Id.* at PageID.179.) Because puppies under six months old may naturally exhibit uncoordinated movement—a characteristic consistent with rabies symptoms—visual inspections of puppies less than six months of age are less likely to identify rabies. In other words, increasing the age to six months makes visual inspection more accurate. (*Id.* at PageID.171.) Second, the CDC adopted a serologic titer system,[3] which had proven effective during the temporary suspension in decreasing incidents of fraudulent documentation, decreasing the numbers of dogs being denied admission into the U.S. and being determined to be a sick dog on arrival, and reducing federal and state resources required to respond to issues relating to inadequately vaccinated dogs upon arrival. 88 Fed. Reg. at 43979. Weighing the risk of importing a dog too soon against the burden on animal importers of waiting, the CDC determined that the average amount of time recommended by experts (two months) after blood may first be drawn from a puppy at four months was an appropriate waiting period. (*Id.* at PageID.169–70.) Finally, the CDC determined that increasing

---

[3] A serologic titer is a blood test that is used to look for antibodies to specific diseases. (ECF No. 10-1 at PageID.165, 169.)

the age to six months would align with United States Department of Agriculture regulations under the Animal Welfare Act (AWA), which is primarily concerned with animals kept in zoos and laboratories, as well as animals commercially bred for resale. Those regulations require that dogs imported into the U.S. for resale be in good health, have received all necessary vaccinations, and be at least six months old at the time of entry.[4] (*Id.* at PageID.170.) *See* 89 Fed. Reg. at 41727.

The CDC imposed the microchip requirement to help identify dogs diverted from high-risk countries through low-risk or rabies-free countries. (*Id.* at PageID.180.) When a microchip is present, the CDC may be able to verify the dog's identity, and thus, whether it originated from a high-risk country, by contacting the veterinary clinic in the foreign country that implanted the microchip. (*Id.*) At present, 86 percent of rabies-free countries require use of microchips. (*Id.* at PageID.177.)

The CDC identified Section 361 of the Public Health Service Act (PHSA), 42 U.S.C. § 264, as the primary legal authority supporting the proposed rule. 88 Fed. Reg. at 43985. Section 264 provides, in pertinent part:

> The [CDC], with the approval of the Secretary [of HHS], is authorized to make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession. For purposes of carrying out and enforcing such regulations, the Surgeon General may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary.

---

[4] In its Notice of Proposed Rulemaking, the CDC proposed a limited exception to the six-month age requirement for individuals seeking to import up to three personal pet dogs in a calendar year, so long as they arrived from Canada or Mexico and had not been in a high-risk country. 88 Fed. Reg. at 43993. It ultimately declined to adopt the exception due to numerous instances of importers transferring dogs from high-risk countries to Canada or Mexico and claiming that the dogs had not been in high-risk countries. (ECF No. 10-1 at PageID.175–76.)

42 U.S.C. § 264(a). Although the statute originally specified the Surgeon General, authority under Sections 361 through 369 of the PHSA has been delegated to the CDC Director. 85 Fed. Reg. 56424, 56424 n.1. Other sections of the PHSA cited as authorization included Section 362, which provides:

> Whenever the [CDC Director] determines that by reason of the existence of any communicable disease in a foreign country there is serious danger of the introduction of such disease into the United States, and that this danger is so increased by the introduction of persons or property from such country that a suspension of the right to introduce such persons and property is required in the interest of the public health, the [CDC Director], in accordance with regulations approved by the President, shall have the power to prohibit, in whole or in part, the introduction of persons and property from such countries or places as he shall designate in order to avert such danger, and for such period of time as he may deem necessary for such purpose.

42 U.S.C. § 265.

### C.    The Plaintiffs

Plaintiffs engage in activities involving dogs and claim injury due to the new requirements of the Dog Rule. USSAF is a non-profit organization that represents the hunting, fishing, and trapping communities. (ECF No. 8-3 at PageID.86.) Its members hunt with and trial dogs, and it advocates on their behalf. (*Id.* at PageID.86–87.) Because of the Dog Rule, its U.S. and Canadian members will be unable to cross the U.S.-Canadian border for their next hunting trip with their dogs, enter their dogs in field trials, or seek specialized veterinary care unless the dogs are over six months old and microchipped. (ECF No. 8-3; ECF No. 8-5.) USSAF members believe that microchipping is unnecessary, and their veterinarians have not recommended it, and they state that, in some instances, it has harmed their dogs. (ECF No. 8-3; ECF No. 8-5.)

Plaintiff Guthrie is an avid hunter and dog trialer. His club regularly hosts events in Michigan attended by Canadians and their dogs. Because of the Dog Rule, his club is expecting to see fewer Canadians with fewer dogs at their events, which will result in the loss of revenue and

6

prestige of the events. (ECF No. 8-7.) Plaintiff Krpan and her husband have been breading beagles in Canada since the 1970s. They have produced around 250 champion dogs and are committed to breeding excellent dogs. (ECF No. 8-9 at PageID.112.) They have sold dogs into 49 states. Krpan and her husband typically ship their dogs at about ten-weeks-old, one week after their second round of vaccinations, which is during the period of time when it is easier for them to socialize and adjust to their new environment. She believes that it would be harmful to a dog to wait and transfer it at six months. (*Id.*) Krpan would continue to sell dogs into the U.S. at eight-to-ten weeks, but the Dog Rule prohibits her from doing so. Because of the Dog Rule, they have had to sell 15 dogs from their breeding stock and cancel 20 orders. Krpan states that unless the Dog Rule is changed, they will be forced to discontinue their business. (*Id.* at PageID.113.)

## II. Motion Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A court should grant an injunction "only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

In ruling on a motion for a preliminary injunction, a court considers four factors: "(1) whether the plaintiffs are likely to succeed on the merits; (2) whether the plaintiffs will suffer irreparable injury in the absence of an injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) whether the issuance of the injunction is in the public interest." *Michigan State AFL–CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997). These are factors to be balanced, not prerequisites that must be met. *See Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994). A district court need not make specific findings on each of the four factors if fewer factors are dispositive of the issue. *See In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir.

1985). Stated slightly differently, "[w]here the three factors other than the likelihood of success all strongly favor issuing the injunction, a district court is within its discretion in issuing a preliminary injunction if the merits present a sufficiently serious question to justify a further investigation." *Little Caesar Enters., Inc. v. R–J–L Foods, Inc.*, 796 F. Supp. 1026, 1030 (E.D. Mich. 1992). "However, 'the likelihood of success on the merits often will be the determinative factor.'" *Wilson v. Williams*, 961 F.3d 829, 837 (6th Cir. 2020) (citing *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689 (6th Cir. 2014)). The Sixth Circuit has "warn[ed] that a court must not issue a preliminary injunction where the movant presents no likelihood of merits success." *Id.* at 844 (quoting *Daunt v. Benson*, 956 F.3d 396, 421–22 (6th Cir. 2020)).

### III.  Analysis

#### A.  Likelihood of Success

To establish this factor, a plaintiff "is always required to demonstrate more than the mere 'possibility' of success on the merits." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991); *Gonzales v. National Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) (stating that "a finding that there is simply no likelihood of success on the merits is usually fatal").

##### 1.  CDC Did Not Exceed its Statutory Authority

###### a.

Plaintiffs argue that, in adopting the Dog Rule, the CDC exceeded its statutory authority. They first contend that, rather than looking to more specific statutory provisions, the CDC improperly relied on the more general grant of authority in Section 264(a) and, in doing so, improperly ignored the second sentence of that provision which cabins the broad grant of authority set forth in the first sentence. This argument lacks merit.

Plaintiffs cite the maxim of statutory interpretation that a specific statute of specific intention takes precedence over a general statute, *see Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384–85 (1992); *Busic v. United States*, 446 U.S. 398, 406 (1980), and the related principle that a later statute may limit the scope of an earlier statute. *See Davis v. United States*, 716 F.2d 418, 428 (7th Cir. 1983). As the Supreme Court explained in *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012), "[t]he general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission. To eliminate the contradiction, the specific provision is construed as an exception to the general one." *Id.* at 645.

Plaintiffs first contend that the AWA is a specific statute that takes precedence over Section 264(a). As noted above, the AWA requires that dogs imported into the U.S. for resale be in good health, have received all necessary vaccinations, and be at least six months old at the time of entry. 7 U.S.C. § 2148(b)(1). Plaintiffs contend that because, in enacting the AWA, Congress chose to leave the importation of personal pet dogs unregulated, the AWA does not give federal agencies such as the CDC any authority to regulate personal dog imports. Plaintiffs further contend that the AWA prevails over Section 264 because Congress enacted it more recently, and thus, it is "last in time." This argument fails because the AWA and the PHSA address different concerns. The AWA has the following goals:

> (1) to insure that animals intended for use in research facilities or for exhibition purposes or for use as pets are provided humane care and treatment; (2) to assure the humane treatment of animals during transportation in commerce; and (3) to protect the owners of animals from the theft of their animals by preventing the sale or use of animals which have been stolen.

7 U.S.C. § 2131. The AWA is thus concerned with protecting animals in certain, defined circumstances. In contrast, the PHSA is aimed at protecting public health. In other words, the AWA is not a specific permission or prohibition that contradicts the PHSA. Thus, the

general/specific canon has no application here. *See United States v. Long Cove Seafood, Inc.*, 582 F.2d 159, 166 n.4 (2d Cir. 1978) (declining to apply the general/specific canon because the National Stolen Property Act, 18 U.S.C. § 2314—a law prohibiting transportation, sale, or receipt of stolen goods, forged securities, and other items obtained in interstate commerce—and the Lacy Act, 18 U.S.C. § 43—a law prohibiting trade in wildlife, fish, and plants that have been illegally taken, possessed, transported, or sold—"speak to different concerns"). Moreover, if Congress had intended the AWA to preclude all regulation of personal pets, as Plaintiffs argue, it would have expressly said so in light of the previously-existing regulation on the import of dogs adopted in 1956. *See* 42 C.F.R. § 71.154; *cf. Powars v. United States*, 285 F. Supp. 72, 74 (C.D. Cal. 1968) ("It must be assumed that Congress in 1962 was aware that the Federal Tax Regulations had, since 1958, construed the section 179 term 'tangible personal property' to mean tangible property other than land and improvements thereto, and there is nothing to indicate that Congress intended to change that construction.").

Plaintiffs also contend that the CDC should have looked first to 42 U.S.C. § 265 because that statute is more specific than Section 264(a). From there, they contend that Section 265 could not have authorized the Dog Rule because the CDC failed to make the findings required by 42 C.F.R. § 71.63(a), that (1) a communicable disease is present in a foreign country; (2) there is a danger that the disease will enter the U.S.; and (3) the entry of imports (animals, articles, or things) from such a country increases the risk of introduction of the disease. Plaintiffs note that, while the CDC made those findings in connection with the temporary suspension of imports from dogs from high-risk countries in 2021, it failed to do so in connection with the final rule changing the Dog Rule. Like Plaintiff's argument regarding the AWA, Sections 264(a) and 265 do not conflict with each other. They simply authorize different facets of action the CDC may take to prevent the spread

of communicable diseases into the U.S. resulting from importation of dogs. Section 264(a) authorizes the CDC to adopt "measures directly relat[ed] to preventing the interstate spread of disease by identifying, isolating, and destroying the disease itself[,]" *Alabama Ass'n of Realtors v. Department of Health & Human Servs.*, 594 U.S. 758, 763 (2021), while Section 265 allows the CDC to "prohibit, in whole or in part, the introduction of persons and property" from specifically designated countries. 42 U.S.C. § 265. These are *complementary*, not conflicting, provisions. The Dog Rule is more appropriately considered a rule pertaining to general inspection requirements under Section 264(a) rather than a country- or place-specific prohibition on the introduction of persons or property under Section 265. Finally, Plaintiffs' argument pertaining to lack of findings under 42 C.F.R. § 71.63 is misplaced, as that provision authorizes emergency action, such as the 2021 temporary suspension of dog imports, not a final rule. *See* 86 Fed. Reg. 32041, 32049 (June 16, 2021) ("This notice is not a rule within the meaning of the [APA], but rather notice of an emergency action taken under the existing authority of 42 CFR 71.51(e) and 42 CFR 71.63.").

b.

Relying on the Supreme Court's decision in *Alabama Association of Realtors*, above, and lower court decisions holding that the CDC exceeded its authority in adopting an eviction moratorium, cruise-ship travel restrictions, immigration-related orders authorizing expulsions, and a travel mask mandate, *see*, *e.g.*, *Tiger Lily, LLC v. United States Dep't of Hous. & Urban Dev.*, 992 F.3d 518, 522–23 (6th Cir. 2021); *Florida v. Becerra*, 544 F. supp. 3d 1241, 1268 (M.D. Fla. 2021); *P.J.E.S. by & through Escobar Francisco v. Wolf*, 502 F. Supp. 3d 492, 512 (D.D.C. 2020); *Health Freedom Def. Fund, Inc. v. Biden*, 599 F. Supp. 3d 1144, 1157 (M.D. Fla. 2022), *vacated as moot sub nom Health Freedom Def. Fund v. President of United States*, 71 F.4th 888 (11th Cir. 2023), Plaintiffs argue that the CDC also did so in adopting changes to the Dog Rule. In *Alabama*

11

*Association of Realtors*, the Court held that the CDC could not rely on the broad grant of authority in the first sentence of Section 264(a) as authority for the eviction moratorium without acknowledging the second sentence because that sentence "informs the grant of authority by illustrating the kinds of measures that could be necessary: inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of contaminated animals and articles." 594 U.S. at 763. The Court observed that these "measures directly relate to preventing the interstate spread of disease by identifying, isolating, and destroying the disease itself." *Id.* The Court observed that the eviction moratorium was "far more" removed from this activity. That is, the "downstream connection between eviction and the interstate spread of disease is markedly different from the direct targeting of disease that characterizes the measures identified in the statute." *Id.* at 764.

In contrast to the eviction moratorium's "downstream connection" to the purposes of Section 264(a), the measures contained in the Dog Rule are directly related to "identifying, isolating, and destroying the disease [of rabies] itself." *Id.* at 763. Although the rule does not specifically address inspections, it facilitates reliable inspections through the six-month age requirement, which helps inspectors determine if puppies are simply uncoordinated or have rabies and ensures that rabies tests are accurate, and through the microchip requirement, which helps the CDC identify and isolate rabies by providing access to health records and indicating whether a dog has been to a high-risk country. At a minimum, then, these measures are authorized under the second sentence's catchall provision for "other measures, as in [the CDC's] judgment may be necessary."[5] 42 U.S.C. § 264(a). Moreover, as Defendants note, the CDC has used Section 264(a) for years to limit the entry of animals into the U.S., and the prior version of the Dog Rule placed

---

[5] Plaintiffs argue that under the statute, "the CDC is limited to destroying" infected animals. (ECF No. 8-1 at PageID.61.) However, this is an overly-restrictive reading given the other measures specified, such as fumigation, disinfection, sanitation, etc.

age limits on dogs entering the country, although only on dogs from high-risk countries. *See* 42 U.S.C. § 71.51(a), (c) (1985 version). Likewise, the Food and Drug Administration has used the statute as the primary basis for banning the commercial sale of small turtles. *See* 21 C.F.R. § 1240.62; *Louisiana v. Mathews*, 427 F. Supp. 174, 175–76 (E.D. La. 1977) (holding that a "total ban" on the commercial sale of small turtles was permissible under Section 264 "as necessary to prevent the spread of communicable disease"); *see also Alabama Ass'n of Realtors*, 594 U.S. at 761 (noting that "[r]egulations under [Section 264(a)] have generally been limited to quarantining infected individuals and prohibiting the import or sale of animals known to transmit disease (citing 40 Fed. Reg. 22543 (1975) (banning commercial sale of small turtles known to carry salmonella)). Thus, requiring that dogs be at least six months of age and microchipped for entry into the U.S. is within the grant of authority under Section 264(a).

c.

Plaintiffs also contend that the Court must construe Section 264(a) narrowly under other cannons of statutory construction. I disagree.

Plaintiffs first contend that this case implicates the "major questions doctrine," which applies when an agency claims an "[e]xtraordinary grant[] of regulatory authority . . . through 'modest words,' 'vague terms,' or 'subtle device[s] . . . to empower [the] agency to make a 'radical or fundamental change' to a statutory scheme." *West Va. v. Environmental Prot. Agency*, 597 U.S. 697, 723 (2022). The doctrine applies in cases involving "vast economic and political significance," where Congress normally would be expected to speak when granting agency authority. *Alabama Ass'n of Realtors*, 594 U.S. at 764 (internal quotation marks omitted). These circumstances were present in *Alabama Association of Realtors*, where the CDC's eviction moratorium imposed a significant financial burden on landlords and intruded into the landlord-

13

tenet relationship, "an area that is the particular domain of state law, *id.*; in *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 129 (2000) where the FDA argues that it had the power to regulate, or even ban, tobacco products by virtue of its authority over "drugs" and "devices"; and in *Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 324 (2014), in which in response to the EPA's claim of authority to regulate greenhouse gases, the Court noted that the agency's interpretation would have given it permitting authority over millions of small sources that had never been subject to such regulation.

These circumstances are not present here. Allowing the CDC to regulate dog importations, particularly given its history of doing so, does not amount to an extraordinary grant of authority having "vast economic and political significance." *Alabama Ass'n of Realtors*, 594 U.S. at 764. Nor is the Dog Rule based on vague words in Sections 264(a) or 265. Finally, although Plaintiffs argue that "[r]equiring vaccines is a major question" (ECF No. 8-1 at PageID.63), the case they cite, *National Federation of Independent Business v. Occupational Safety and Health Administration*, 595 U. S. 595 U.S. 109, 122–23 (2022) (Gorsuch, J., concurring), involved a vaccination mandate for people, not dogs, and the Dog Rule's requirements pertain to entry inspections, not a vaccine mandate.

Plaintiffs also contend that the Dog Rule violates the federalism canon and the non-delegation doctrine. These arguments fail, however, because they are premised on Plaintiff's erroneous assertion that the CDC adopted the Dog Rule based solely on the first sentence of Section 264(a) without consideration of the limiting language of the second sentence.

Finally, Plaintiffs point to proposed legislation, the Healthy Dog Importation Act of 2023, S. 502, 118th Cong. (2023), which would have authorized the Secretary of HHS to require dogs entering the U.S. to be "officially identified by a permanent method," such as a microchip or a

14

tattoo. *Id.*, § 10404A. Plaintiffs contend that Congress's failure to enact the proposed legislation signals its intent not to require microchips. This argument fails, however, because the proposed legislation would have amended the Animal Health Protection Act, 7 U.S.C. § 8301 *et seq.*, which, like the AWA, is concerned with protecting the health of animals. The proposed legislation thus addressed a different concern than the Dog Rule. Moreover, the proposed legislation does not indicate that Congress has rejected the requirement of microchipping imported dogs, as it was introduced to the Committee on Agriculture, Nutrition, and Forestry on February 16, 2023, without further action to date.[6]

### 2. The Dog Rule Is Not Arbitrary and Capricious

Under the APA, a court must set aside an agency decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The agency must, however, articulate a "rational connection between the facts found and the choice made." *Id.* at 43. Judicial review is limited to the administrative record before the agency at the time of its decision. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419–20 (1971).

#### a.

Plaintiffs contend that the Dog Rule's age requirement is not based on defensible and reasoned decision-making for several reasons. First, Plaintiffs contend that the CDC's justification that the Dog Rule's six-month age requirement aligns with and furthers the enforcement of the

---

[6] *See* https://www.congress.gov/bill/118th-congress/senate-bill/502/all-actions (last visited Dec. 15, 2024).

AWA is unsupported because the AWA applies only to commercial imports, and Congress did not clearly intend for the CDC or any other federal agency to regulate personal dog imports by requiring that they be six months of age. As already explained, nothing about the AWA indicates that Congress intended to restrict the CDC's authority to regulate animal imports under the PHSA. Moreover, the CDC found importers violating the AWA in ways the changes to the Dog Rule will help prevent. 89 Fed. Reg. 41766 ("HHS/CDC has documented many instances of young dogs under six months of age being routed from DMRVV high-risk countries through DMRVV-free countries, such as Canada or Mexico, to circumvent U.S. entry requirements.").

Second, Plaintiffs contend that the age restriction is not justified as to rabies-free countries because the Dog Rule imposes no vaccine requirement for dogs from low-risk and rabies-free countries. (ECF No. 8-1 at PageID.67 (citing 89 Fed. Reg. 41731 (Table E1)). Plaintiffs note that one of the CDC's cited reasons for the six-month age restriction is that a dog's dental patterns at six months make it easier to accurately assess the dog's age and whether it is old enough to be fully protected by the rabies vaccine. 89 Fed. Reg. 41765. Plaintiffs argue that the six-month requirement is thus arbitrary and capricious because, absent a vaccine requirement, there is no need to check a dog's teeth to determine whether it is old enough to be fully vaccinated. The CDC decided not to impose a vaccine requirement on such countries because it "has confidence in DMRVV-free and low-risk countries which demonstrate adequate surveillance capacity and vaccination control measures . . . ." *Id.* at 41739. In addition, the Dog Import Form requires the importer to certify under penalty of perjury whether the dog has been in a high-risk county in the last six months. *See* https://cdc-786687.workflowcloud.com/forms/090dc543-7b2f-4538-b2c7-2919d12ecc73. Still, because the CDC has documented importers lying about whether dogs had been in a high-risk country, the Dog Rule requires that all dogs—even those not subject to a

16

vaccine requirement—be inspected to alleviate the risk that false statements will result in the reintroduction of rabies.[7] *See* 42 C.F.R. § 71.51(i).

Next, Plaintiffs argue that the six-month requirement is arbitrary and capricious because the CDC reports that it has not observed any rabies infections in dogs imported from rabies-free or low-risk countries. 89 Fed. Reg. 41753. Plaintiffs thus argue that the CDC is combating a problem that it has never seen. However, in 2019, a rabid dog was diverted from Egypt to Canada, and then to the U.S. (ECF No. 10-1 at PageID.165.) In any event, the requirement is still based on reasoned decision-making because CDC has noted instances of importers routing dogs from high-risk countries through rabies-free countries to avoid import requirements. 89 Fed. Reg. 41753 ("CDC has observed that many importers have tried to circumvent CDC requirements for dog importation and the provisions in this final rule are chosen to mitigate these risks.").

Finally, Plaintiffs argue that the Dog Rule is unjustified because increased COVID-19 related demand for pet dogs has subsided, yet the CDC ignored comments from one of USSAF's members citing more recent evidence supporting this point in favor of more dated evidence. While the CDC acknowledged this evidence, it cited other evidence indicating that demand for dogs from abroad has remained high, including "118,312 signatures from supporters of international dog rescues, suggesting the demand for dogs and the desire to import dogs from DMRVV high-risk countries remains high." *Id.* at 41759. However, even if demand had decreased, the six-month

---

[7] Plaintiffs make an additional argument that the fraud justification does not hold water because the CDC is not making any attempt to check a dog's age or medical records when it comes in from a low-risk or rabies-free country. (ECF No. 8-1 at PageID.69–70.) However, those dogs are still subject to inspections, which may reveal abnormal circumstances. If so, the inspector can check for a microchip, from which it can be determined whether the dog had been in a high-risk country, and obtain the dog's records.

requirement remains sound based on instances of people fraudulently diverting dogs from high-risk to rabies-free countries.

b.

Plaintiffs also challenge the microchip requirement on the grounds that the CDC does not require vaccinations from dogs in low-risk or rabies-free countries and the Dog Import Form does not ask for the microchip number unless the dog is from a high-risk country, so the CDC is not verifying anything or detecting fraud by requiring the implementation of a microchip. (ECF No. 8-1 at PageID.71.) Like other arguments, this one ignores the inspection requirement and information that can be obtained from a microchip if the inspection reveals concerns about the dog. 89 Fed. Reg. 41768 ("Microchips are a critical component of a dog importation system designed to mitigate occurrences of fraud in dog importations because microchips ensure that veterinary records for a dog can be linked to that specific dog.") A microchip thus helps prevent importers from misrepresenting whether the dog has been in a high-risk country and, if so, whether it has had the required vaccinations. *Id.* at 41758 ("Microchips are a widely used method of confirming the dogs' identity and help prevent importers from fraudulently presenting dogs for admission that do not match the dogs' accompanying health records.").

c.

Plaintiffs also contend that the CDC failed sufficiently to explain its departure from past practices in two respects. *See National Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005) ("Unexplained inconsistency is" a "reason for holding an interpretation to be an arbitrary and capricious change from agency practice"). First, they argue that it had failed to make the predicate findings as required by 42 C.F.R. § 71.63(a). While the CDC had cited that rule to support the temporary suspension in 2021, it was not using that rule to justify changes to

the Dog Rule. Rather, it was establishing a new, final rule that required notice and comment. Thus, findings under the regulation were unnecessary.

Second, Plaintiffs contend that the CDC offered an arbitrary explanation of its reasons for departing from its "least-restrictive means policy." (ECF No. 8-1 at PageID.73.) As support for this policy, Plaintiffs cite a statement in a prior, final regulation, *Control of Communicable Diseases*, 82 Fed. Reg. 6890, 6912 (Jan. 19, 2017), that "HHS/CDC agrees and clarifies that in all situations involving quarantine, isolation, or other public health measures, it seeks to use the least restrictive means necessary to prevent spread of disease." In the final Dog Rule, however, the CDC "clarifie[d] that there is no agency policy of using the 'least restrictive means' (as that concept is typically understood and applied in cases involving interests protected by the U.S. Constitution) regarding animal importations under 42 CFR part 71." 89 Fed. Reg. at 41738. Contrary to Plaintiffs' assertion, the CDC did not depart from a previous least-restrictive means policy in adopting the Dog Rule, as the prior regulation pertained to quarantine and isolation of *people*, not animals. Thus, the CDC did not fail to explain a departure from prior policy.

Relatedly, Plaintiffs challenge the CDC's statement in the final rule that "individuals have no protected property or liberty interest in importing dogs or other animals into the United States . . . ." *Id.* First, they argue that Sections 264 and 265 refer only to introduction, not importation, so if a person takes his or her dog out of the country for a hunting trip and returns, they are not "introducing" the dog to the country. However, Section 264 pertains to introduction of disease, not the dog, which is what the Dog Rule targets. And Section 265 pertains to both introduction and entry, which occurs each time a dog crosses the border into the U.S. Second, Plaintiffs argue that prohibiting people from entering the country with their dogs touches on the right to travel abroad and to reenter the country when they choose. But Plaintiffs fail to cite any authority supporting the

19

proposition that a citizen has the right to enter the U.S. with any particular property. In fact, there is "no constitutionally-protected right to import into the United States." *Ganadera Indus., S.A. v. Block*, 727 F.2d 1156, 1160 (D.C. Cir. 1984). As Defendants note, recognition of such a right could render invalid not only the Dog Rule in its present form, but also the previous rule and the longstanding turtle ban.

In light of the foregoing, Plaintiffs fail to demonstrate that they are reasonably likely to succeed on the merits. As noted above, if a court finds that the movant has failed to establish likelihood of success on the merits, it must not grant a preliminary injunction. *Wilson*, 961 F.3d at 844 (quoting *Daunt v. Benson*, 956 F.3d 396, 421–22 (6th Cir. 2020)).

### IV.   Conclusion

For the foregoing reasons, I recommend that Plaintiffs' motion be denied.

Dated: February 11, 2025                               /s/ Sally J. Berens
                                                        SALLY J. BERENS
                                                        U.S. Magistrate Judge

### NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).